**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **14 CR 6183** |
| **v.** | **NOTICE OF MOTION** |
| **EDWIN MURRAY**, | |
| **Defendant.** | |

| | |
|---|---|
| **MOTION BY**: | Steven Slawinski, Assistant Federal Public Defender, Attorney for Edwin Murray |
| **DATE, TIME & PLACE**: | April 2, 2015 at 9:30 a.m., before the Honorable Jonathan Feldman, U.S. Courthouse, Rochester, New York. |
| **SUPPORTING PAPERS**: | Affirmation of Steven Slawinski, affirmed on March 16, 2015, the attachments hereto, and all prior proceedings herein. |
| **RELIEF REQUESTED**: | An Order granting the relief requested herein. |

Dated: March 16, 2015
       Rochester, New York

                                                      /s/Steven Slawinski
                                                  Steven Slawinski
                                                  Assistant Federal Public Defender
                                                 28 East Main Street
                                                 First Federal Plaza, Suite 400
                                                 Rochester, New York 14614
                                                 585-263-6201
                                                 Steven_Slawinski@fd.org
                                                 Attorney for Edwin Murray

TO:    Charles Moynihan, AUSA

AO 72A
(Rev. 8/82)

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**               **14 CR 6183**

      **v.**                                           **AFFIRMATION**

**EDWIN MURRAY,**

      **Defendant.**

---

Steven Slawinski, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent Edwin Murray.

I am familiar with this case by reasons of my investigation of this matter, conversations with my client and others, and my review of the discovery material provided to date by the government.

This affirmation is submitted in support of the various forms of relief requested herein, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  MOTION TO SUPPRESS STATEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  DISCOVERY AND INSPECTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.   FED. R. EVID. 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.  FED. R. EVID. 608 & 609. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VII. DISCLOSURE OF WITNESS STATEMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VIII. PRESERVATION OF ROUGH NOTES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IX.  RESERVATION OF RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AO 72A
(Rev. 8/82)

## I. INTRODUCTION

1.     Edwin Murray (hereinafter "Murray") is charged in a four-count indictment with offenses relating to the possession of a firearm and possessing cocaine with the intent to distribute. Specifically, the first count charges that Murray possessed cocaine with the intent to distribute in violation of 18 U.S.C. § 841(a)(1). Count Two charges that he used a premises to distribute the cocaine in violation of 18 U.S.C. § 856(a)(1). Count Three charges that he possessed a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Finally, Count Four charges that he is an armed career criminal in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). All of these charges are alleged to have occurred on August 20, 2014 in the Western District of New York.

## II. FACTUAL BACKGROUND

2.     On August 20, 2014, a no-knock search warrant was executed by law enforcement at 54 Miller Street, downstairs apartment, in Rochester, New York. (See Warrant and Affidavit at Exhibit 1).

3.     Officers breached the front door of the residence looking for evidence of drug trafficking. When they entered, they found the resident, Edwin Murray, in his bedroom and ordered him down on the ground. The officers then handcuffed Murray and arrested him while he was on the ground. (See Murray's Affidavit at Exhibit 2).

4.     When Murray was handcuffed on the ground, an officer asked him, "Where is it? You know what I am looking for." Murray then nodded to under the bed, where drugs were found in a small shoebox. After that, Murray was led out of the house as the officers conducted the search.

When he was outside of the house in a police vehicle, Murray observed his wife, Chris Murray, outside of the house in handcuffs.

5. Rochester Police officers transported Murray to the public safety building downtown. He was placed in an interrogation room and was read his *Miranda* rights by Rochester Police Investigator Ferro. Murray was told that if he admitted to possessing the drugs and firearm that were found at 54 Miller Street, his wife would not be prosecuted. Previously, Murray had not known that police had found a firearm in his house. At that point, Murray admitted to possessing both items and signed a statement that had been prepared by Ferro (Exhibit 3, signed statement). After Murray had done this, his wife was let into the interrogation room (Exhibit 2). To date, Chris Murray has not been prosecuted for possessing either the drugs or the firearm.

### III. MOTION TO SUPPRESS STATEMENTS

6. The statements made by Murray to Investigator Ferro were involuntary and should be suppressed. The statements were coerced and involuntary because law enforcement threatened to prosecute his wife before Murray made his statements. As such, Murray' answer to the questions and actions and statements by law enforcement should be suppressed. Murray's statements admitting to possessing the firearm and cocaine should be excluded from evidence.

7. When Investigator Ferro threatened to prosecute Murray's wife after he had seen her handcuffed, he was coercing a statement from Murray. Threats to arrest a defendant's family often constitute impermissible coercion that may render a resulting confession involuntary.

8. Several courts have said that threats to arrest family members do rise to the level of coercion and that statements made to police should be considered involuntary. In *Rogers v. Richmond*, 365 U.S. 534, 538-39 (1961), the Supreme Court remanded a case for a determination of the

4

voluntariness of a confession elicited after police threatened the arrest of the defendant's spouse and foster children. The court in *United States v. Anderson*, 929 F.2d 96 (2d Cir. 1991) suppressed a defendant's statement where agents threatened to withhold cooperation credit if he asked for a lawyer. The court held:

> A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given. Whether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. The prosecution has the burden of establishing by a preponderance of the evidence that a suspect waived his *Miranda* rights, and that his confession is truly the product of free choice. Id., citations omitted.

In *United States v. Moreno*, officers separated the defendant from her 16-year-old daughter when both of them were crying. 891 F.2d 247, 249 (9th Cir. 1989). The officers then took her daughter into custody in handcuffs. Id. The defendant told police that she "would tell anything if her daughter could be released." Id. The court held that the circumstances surrounding the defendant's confession presented evidence of "police overreaching" and remanded the case for a voluntariness hearing. Id. In *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993), the Court found that the statement of the defendant, who pointed to the location of alleged cocaine, was involuntary and inadmissible because police officers elicited his statement after five police officers forcibly entered his residence, confronted the defendant and two other individuals separately, with their guns drawn, and threatened to arrest the defendant's mother and female companion. Id. There are many cases where Courts have held that a defendant's free will can be overborne and his statements are rendered involuntary by police threats or intimidation. A

5

statement can be coerced and considered involuntary even if Miranda warnings were given to the defendant. *See Anderson,* 929 F.2d at 111.

9.  Murray made his statement about the gun and drugs because Investigator Ferro threatened that Chris Murray would be responsible for the contraband in their house and would face criminal charges. This in itself was a ruse, as Ferro had no intention of prosecuting Chris Murray. The only reason Ferro said this was to get Murray to admit that the gun and drugs were his. Clearly this tactic was designed to elicit an incriminating response from Murray.  The actions and words of Ferro were coercive and designed to get Murray to make a statement against his interest.  In his written statement, Murray even states, "My wife had nothing to do with it. She didn't even know." (Exhibit 3). Because of the police tactics, Murray's responses were involuntary and should be suppressed from evidence.  Murray would respectfully request an evidentiary hearing with regard to this issue.

## IV . DISCOVERY AND INSPECTION

10.  The Court, in its Scheduling Order, directed that the prosecution provide voluntary discovery, including all the items required pursuant to FED. R. CRIM. P. 16(a).  By letter dated December 16, 2014, the government provided voluntary discovery to the defense.

11.  The defense also requests the ability to inspect the physical evidence that the government intends to introduce at trial.

12.  Otherwise, the defense relies upon the Court's standard scheduling order.

## V . FED. R. EVID. 404(b)

13.  Pursuant to FED. R. CRIM. P. 12(b) and FED. R. EVID. 404(b), Murray requests that the government notify him of any evidence that the government contends would be admissible under

6

FED. R. EVID. 404(b). Such notice would permit Murray to file appropriate motions to suppress, prior to trial, of any evidence the government contends would be admissible to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of a mistake." FED. R. EVID. 404(b).

## VI. FED. R. EVID. 608 & 609

14. The defense requests disclosure of all evidence of convictions and prior bad acts that the government intends to use for impeachment of the defendant, should he testify at trial, pursuant to FED. R. EVID. 608(b) and 609(a).

## VII. DISCLOSURE OF WITNESS STATEMENTS

### Contents of Disclosure

15. Murray moves for disclosure of witness statements pursuant to 18 U.S.C. § 3500 ("*Jencks Act*") and FED. R. CRIM. P. 26.2. The Second Circuit has interpreted this statute to include a substantially verbatim statement of a witness' words as recorded by a government agent if they could fairly be deemed to reflect fully and without distortion what had been said to a government agent. *United States v. Scotti*, 47 F.3d 1237, 1249 (2d Cir. 1995).

16. The defense further requests an order requiring production of *Jencks Act* materials, namely all statements and reports in the possession of the United States which were made by government witnesses or prospective government witnesses and which relate to the subject matter about which those witnesses may testify, as per the *Jencks* Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure.

        A.    The term "statements" shall include:

    (i)    Any written statement made by a witness and signed or otherwise adopted or approved by him;

    (ii)    Stenographic, mechanical, electronic or other recording, or transcriptions thereof, which are a substantially verbatim recital of an oral statement made by a witness and recorded contemporaneously with the making of such oral statement;

    (iii)    A statement, however taken or recorded, or a transcription thereof, if any, made by a witness to a grand jury;

    (iv)    Statements which fairly and fully reflect, without distortion, made to a government agent by a witness, *United States v. Scotti,* 47 F.3d 1237 (2d Cir. 1995);

    (v)    Any and all rough notes of witness interview(s) taken or obtained in any investigation of the defendant including federal, state, local, and other investigations whether or not the contents thereof have been incorporated in official records;

    (vi)    Any notes and memoranda made by government counsel during the interview of any witness(es) intended to be called by the government in their direct case, *Goldberg v. United States*, 425 U.S. 94, 101-104 (1976); and

    (vii)    All surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 71 (2d Cir. 1981).

### Timing of Disclosure

17.    Prompt pre-trial delivery of *Jencks* material insures that the defendant's fundamental rights to a fair trial and due process are safeguarded.  Therefore, the defense seeks production of the *Jencks* material one month prior to trial for the purposes of judicial economy, to expedite discovery and the trial of this case.

18.    Although a District Court may not ordinarily compel disclosure of *Jencks* material prior to the conclusion of a witness' direct examination, early disclosure of *Jencks* material obviates trial interruptions and permits defense counsel to study the disclosures.  *See United States v.*

*Campagnuolo*, 592 F.2d 852, 858 n.3 (5th Cir. 1979). Courts have, on a case-by-case basis, invoked their discretion to require production of *Jencks Act* statements in advance of the trial so that unnecessary delays will not take place during the course of the trial. *See United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974); *United States v. Feola*, 651 F. Supp. 1068, 1139-40 (S.D.N.Y. 1987).

19. Wherefore, the defense requests that the Court order disclosure of the *Jencks* material one month prior to the scheduled trial date.

## VIII. PRESERVATION OF ROUGH NOTES

20. Murray moves for an Order of this Court requiring all government agents and officers who participated in the investigation in this case to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records.

21. This motion is made so that the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs*, *Giglio* and/or the Jencks Act. *United States v. Sanchez*, 635 F.2d 47 (2d Cir. 1980); *United States v. Eleusma*, 849 F.2d 76 (2d Cir. 1988), *cert. denied*, 489 U.S. 1097 (1989); *United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989).

22. This motion is intended to put the government and its agents on notice that, from this point on, any and all rough notes referred to above should be preserved.

## IX. RESERVATION OF RIGHTS

23. Murray respectfully requests the opportunity to supplement this pleading should the government's response raise additional issues of fact or law not sufficiently addressed herein.

Dated:      March 16, 2015
            Rochester, New York

                                                Respectfully submitted,

                                                _/s/Steven Slawinski_
                                                Steven Slawinski
                                                Assistant Federal Public Defender
                                                28 E. Main Street, Suite 400
                                                Rochester, New York 14614
                                                585-263-6201
                                                Steven_Slawinski@fd.org
                                                Attorney for Edwin Murray

To: Charles Moynihan, AUSA

AO 72A
(Rev. 8/82)